STEVEN G. KALAR
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Telefacsimile: (415) 436-7706

Counsel for Defendant KIDD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-13-0363 EMC |
| ) | |
| Plaintiff, ) | DEFENDANT MERCEDEZ KIDD'S |
| ) | SENTENCING MEMORANDUM |
| v. ) | |
| ) | Hearing Date: July 30, 2014 |
| MERCEDEZ KIDD, ) | Time: 2:30 p.m. |
| ) | Court: The Honorable Edward M. Chen |
| Defendant. ) | |

## **INTRODUCTION**

Mercedez Kidd is at a crossroads: she can stay on the path of counseling, medication, support and health that she has been on since her arrest for the instant offense and live a productive and positive life *or* she can return to the destructive path of drugs and abuse she was on before her arrest and most likely either die or spend a large part of her life in jail. Given her current demonstrated progress toward rehabilitation, her clear remorse for her actions, and the fact that her rehabilitation will not only protect her, but also society, this Court should not impose a term in custody at this time. Instead, given all of the unique circumstances of this case, including Ms. Kidd's traumatic background and history, her role in the offense, and her clear need for continued rehabilitation, a sentence of five years of probation with a condition that she spend one year in home confinement, along with stringent treatment conditions, is reasonable and appropriate in this case.

# BACKGROUND

At just 25 years of age, Ms. Kidd has already had a tumultuous life. She has struggled with serious mental health and developmental disabilities since she was just a young girl. In an effort to self-medicate for those issues, she started using drugs and alcohol when she was just a kid resulting in a debilitating addiction to controlled substances that she will now be forced to contend with for life. Her issues have also made her particularly vulnerable to men who have used and abused her both physically and verbally. While she has experienced periods of sobriety and control with medication, the combination of her severe issues and her youth have made long term stability challenging. A psychologist who evaluated Ms. Kidd concluded that she "is functioning at an age equivalent of about eleven years." Declaration of Jodi Linker in Support of Defendant's Sentencing Memorandum (hereinafter "Linker Decl."), Ex. C, Psychological Report of Dr. Gretchen White (hereinafter "Dr. White Report"). Fortunately, her arrest for the instant offense has finally been the shock to the system that has put Ms. Kidd on her longest and most positive path – a path that we should assist in maintaining so that she can remain healthy, sober and living a productive, law-abiding life.

The struggles that Ms. Kidd has been through since she was a baby are summarized briefly in the Presentence Report and in more detail in the Psychological Report prepared by forensic psychologist Dr. Gretchen White, Linker Decl., Ex. C, and the report from Ms. Kidd's treating psychiatrist of nine years, Dr. Magno, Linker Decl., Ex. D. Instead of repeating that history here, Ms. Kidd implores the Court to carefully review those reports, which cover her personal history, treatment history, diagnosis, and future prognosis. All reports describe the difficulties that Ms. Kidd has faced in her life. Importantly, what those reports also reveal is how the arrest for the current offense has dramatically shifted Ms. Kidd's life for the better. She has been on Pretrial Release since June 2013 – over one year. During that time, she has had only one violation – a single dirty marijuana test very early in her release. Otherwise, she has been completely clean and sober, attending all of her counseling and abiding by all of the conditions of her release. Additionally, she has been working as a babysitter for her sister, and in March secured another babysitting job. Letters from her sister and her employer reveal that Ms. Kidd

has been a reliable and conscientious caregiver, and they have confidence in her ability to care for their children.

Given her progress, the psychiatrist who has treated Ms. Kidd for approximately nine years concludes that if Ms. Kidd continues her intensive treatment, including medication and talk therapy, and maintains her sobriety "she can be successful in life." Linker Decl., Ex. D, Dr. Magno Report at 4. She is best able to do that under the current support structure that has worked since her Pretrial Services Supervision commenced in June 2013 – out of custody, with intense mental health and substance abuse counseling, and with the strong support of her family and a supervising officer.

## ARGUMENT

### I. A SENTENCE OF FIVE YEARS OF PROBATION WITH ONE YEAR OF HOME CONFINEMENT AND INTENSIVE COUNSELING IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO ACHIEVE ALL SENTENCING GOALS

Pursuant to the plea agreement, Ms. Kidd may request a below-guideline sentence of probation and the government may request a sentence no higher than the guidelines. Thus, although the government may oppose a probationary sentence, the government has agreed that such a sentence would be reasonable under the law. Even with the government's ability to recommend a guideline sentence, all parties are now in agreement that the guideline itself does not provide a reasonable sentence under the particular circumstances of this case and a below-guideline sentences is necessary to achieve all of the goals of sentence. Where the parties disagree is what that sentence should be when not tethered to the unfairly elevated guideline. Ms. Kidd submits that a sentence of five years probation, of which one year will be spent in home confinement, a substance abuse treatment condition, and a mental health treatment condition is "sufficient but not greater than necessary" to achieve all of the goals of 18 U.S.C. Section 3553(a).

**A. The PSR Incorrectly Calculates Ms. Kidd's Guidelines**

While the Court is not required to follow the guidelines – and all parties agree that it should not – the Court is required to correctly calculate the guidelines. Ms. Kidd's correct total offense level is 21 and criminal history category is I. While the PSR correctly calculates Ms.

Kidd to be in the lowest criminal history category, it incorrectly concludes that Ms. Kidd's total offense level is 27 by including a two-level increase for "undue influence" pursuant to U.S.S.G. § 2G1.3(b)(2)(B) and failing to include a four-level reduction for her mitigating role in the offense. At the correct offense level of 21 and criminal history category I, the range is 37-46 months.

**1. The Enhancement for Undue Influence Does Not Apply**

U.S.S.G. § 2G1.2(b)(2)(B) provides for a two-level increase in the offense level if a "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." Application Note 3(B) provides that the court "should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior." It further provides for a presumption of voluntariness when the participant is at least ten years older than the minor. While the government concedes that the presumption does not apply in this case, it nonetheless seeks the benefit of the presumption by arguing that the seven to eight year age difference between Ms. Kidd and the minor is substantial enough for consideration by the Court. It is not, and no presumption applies.

Without that presumption, a close consideration of the facts reveals that the government has not met its burden to establish that Ms. Kidd's influence over the minor compromised the minor's behavior. Both the government and the PSR simply equate "undue influence" with the "use of physical force" when the guideline does not suggest any such correlation. The fact that a presumption applies based on an age difference rather than a use of physical force is the clearest illustration that this enhancement is targeting a different type of behavior than physical force. The application note does not even mention physical force. Instead, the cases analyzing this enhancement suggest that this is about influencing an individual to engage in a commercial sex act when she otherwise would not be inclined to do so or targeting otherwise vulnerable minors. *See e.g., United States v. Lay*, 583 F.3d 436 (6th Cir. 2009), *United States v. Myers*, 481 F.3d 11078 (8th Cir. 2007), *United States v. Miller*, 601 F.3d 734 (7th Cir. 2010).

The undisputed facts reveal that the minor in this case was already working as a prostitute before she met Ms. Kidd and Mr. Jackson. *Compare United States v. Brooks*, 610 F.3d 1186, 1199 (9th Cir. 2010) (stating that undue influence did apply in part because "[n]othing in the

record suggests that the girls were inclined to engage in *commercial* sex acts before they met" the defendants)(emphasis in original). She was not unduly influence by Ms. Kidd to engage in prostitution: she met Ms. Kidd and Mr. Jackson when Mr. Jackson responded to a posting the minor herself had placed on myredbook.com advertising her services as an adult prostitute. She informed law enforcement that she had been working as a prostitute long before she met Ms. Kidd and Mr. Jackson. Thus, while physical force was certainly used in this case, that is not the equivalent of "undue influence."

Moreover, the government's own recitation of the facts reveals that Ms. Kidd only hit the minor when "ordered" to do so by Mr. Jackson. Indeed, the minor herself admitted that she also used physical force against another minor when ordered to do so by Mr. Jackson because, just like Ms. Kidd, she feared the consequences of not doing as he told her. Under these facts, the two-level enhancement for undue influence does not apply.

**2.      Ms. Kidd Had a Mitigating Role in the Offense**

The PSR fails to include a four level reduction for Ms. Kidd's mitigating role in the offense pursuant to U.S.S.G. § 3B1.2(a). The government asserts that Ms. Kidd does not qualify for this reduction because "[b]y her own admission, Kidd used physical force against the victim in carrying out the offense, and retained some of the proceeds for herself." Ms. Kidd pled guilty to the charged offense and accepted responsibility for her actions. Those actions involved the use of physical force and maintaining proceeds from her own and the minor's prostitution. That, however, does not address whether she had a "mitigating role" in the offense. Here, there is no doubt that she is less culpable than her co-defendant.

The government fails to adequately account for the undisputed fact that Ms. Kidd used physical force entirely at the direction of Mr. Jackson and that Mr. Jackson repeatedly physically and verbally abused Ms. Kidd as a means to control her. As reported in the PSR, Mr. Jackson demanded that Ms. Kidd "take care of business" when the minor came to their room. PSR ¶ 9. The minor further confirms Ms. Kidd's reports that Mr. Jackson beat Ms. Kidd "in the face, hard." PSR ¶ 10. Mr. Jackson beat Ms. Kidd so badly that she was unable to prostitute for him because her face was so black and blue. *Id*. One time, she was coughing up blood from the

abuse. Police reports from Ms. Kidd's arrest on the instant offense indicate that she still had a black eye at the time of her arrest. Another minor, "Krystal," also confirmed that Kidd "received the same treatment (being beaten)" that the minors received from Mr. Jackson. PSR ¶ 19. The fact that, at times, Ms. Kidd tried to defend herself against Mr. Jackson does not change the fact that relative role in the offense was minor. She did not instigate getting additional girls nor did she suggest hitting them.

What is most telling of Ms. Kidd's mitigating role in the offense is that the minor victim – who has not been charged in this case – admitted that "she was forced to do the exact same thing Kidd was forced to do by Jackson." PSR ¶ 19. That is, she was also forced to "hit another girl (the Mexican girl) several times because she knew if she did not, she would be beaten." PSR ¶ 19. Just as the victim did what she needed to do to avoid getting beaten, so did Ms. Kidd. She was the classic "bottom bitch:" "defined by a government expert as the pimp's most trusted prostitute, responsible for recruiting, collecting money, and possibly disciplining other prostitutes." *United States v. Smith*, 719 F.3d 1120, 1122 (9th Cir. 2013).

What also cannot be lost in this analysis is that, unlike Mr. Jackson, Ms. Kidd was also required to sell her own body for money (when she was not too badly beaten to do so). While the government states that she retained some of the proceeds for herself, she also – unlike Mr. Jackson – had to have sex with men for that money. There is no doubt that she had a mitigating role in this offense and qualifies for a four level reduction. As such, her total adjusted offense level is correctly 21 and criminal history category is I resulting in a range of 37-46 months.

**B.    A PROBATIONARY SENTENCE IS WARRANTED UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE**

Regardless of the Court's determination of the total adjusted offense level, as the Court is well aware, it must not only consider the guideline range; rather, the Court must also consider the other directives set forth in 18 U.S.C. section 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). "The overarching statutory charge for a district court is to impose a sentence sufficient, *but not greater than necessary*" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- to afford adequate deterrence to criminal conduct;
- to protect the public from further crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6); and,
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

A sentence of five years probation with one year of home confinement accomplishes the goals of section 3553(a). Indeed, the Supreme Court in *Gall v. United States*, 128 S. Ct. 586 (2007) made abundantly clear that while a term of probation is less severe than a term of incarceration, it is nonetheless a significant punishment as it substantially restricts an individual's liberty.

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.

*Id.* at 595 -596 (internal footnotes omitted).

If Ms. Kidd is unable to maintain her sobriety or in any way cannot continue living a law abiding life, her probation could be violated and she could then be subjected to a custodial sentence. Custody at this time would only hinder the positive developments she has already achieved and defeat the goals of sentencing. Ms. Kidd respectfully submits that the recommended sentence is warranted based on the following:

There is no doubt that what Ms. Kidd did was wrong and she is going to have a federal

felony conviction as a result of her misconduct. The impact of this federal conviction is apparent when compared to a recent decision in another sex trafficking of a minor case in this District. There, in recognition of a defendants mitigating role in the offense and the severe consequences that result from a federal felony conviction, Chief Judge Wilken ordered that a defendant by granted post-plea diversion on a similar charge. *See United States v. Samantha Lewis,* Case No. 13-315 CW. Here, pursuant to the terms of the plea agreement, Ms. Kidd is not requesting diversion. Instead, she will have a federal felony conviction for a very serious offense and all of the multitude of collateral consequences that accompany such a conviction. She is, however, recommending that the Court consider the best way to both punish her for her conduct *and* not make her life any worse. Instead, this conviction can be an opportunity to assist Ms. Kidd in moving her life forward in a different and positive direction that will rehabilitate her *and* protect the public.

Indeed, all reports from her family, friends and doctors indicate that her arrest and guilty plea for this offense has truly achieved the desired effect: it has shaken her in a way that nothing in the past has. Her mother describes her arrest as "a life saving event" because it has so dramatically turned her life around for the best. Linker Decl., Ex. B, Letter from Sheri Kidd. She describes Ms. Kidd's progress as "nothing short of a miracle," and while recognizing all that her daughter has done wrong, she is extremely proud and supportive of her daughter. *Id*. Her father has struggled a great deal with what Ms. Kidd has done and all that she has been through. Linker Decl., Ex. B, Letter from Johnny Kidd. It has been traumatic for him to hear the horrors that his daughter has faced and the damage that she has done to others, but he now sees all of the positives strides she has achieved and welcomes her new energy in the family. *Id*. Her sister and brother-in-law recognize the dramatic growth and development they have seen in Ms. Kidd over the past year, the strength and confidence she has achieved in her recovery and the trust they have in her to allow her to care for their own children. Linker Decl., Ex. B, Letters from Jamina and Marvin Veasey.

At this time, Ms. Kidd is in her longest stretch of sobriety as an adult and has been consistently taking her medications and attending mental health and substance abuse counseling.

She is also working, contributing positively to her family financially and emotionally, and generally sharing in family responsibilities. Moreover, she is now pregnant with her first child, who is due in September. As she explains in her letter to the Court and as described by her treating psychiatrist, while this was not a planned pregnancy, she realizes that she now *has* to stay on a positive path for the well-being of her child. Linker Decl., Exs. A &D. The recognition of her responsibilities as a mother has had a profound effect on her.

Nonetheless, Ms. Kidd is an addict with serious and severe mental health issues. Fortunately she has finally embarked on a meaningful path toward recovery. She has been sober for over a year. While that may not seem long, it is an eternity in the world of recovery and requires deep commitment and determination to persevere every day. Regardless of the positive strides she has made, she will spend the remainder of her life in a constant battle with her debilitating addiction and mental health issues. Those issues will not go away whether she goes into custody or not. The trick is making sure she keeps them under control and treated. Dr. White concluded:

> Addiction research has documented that it usually takes many attempts to overcome an addiction, and her repeated and nearly continuous participation in treatment programs suggest and ultimately positive outcome. With increasing maturity, continuing treatment, sobriety and the proper medication, she is at low risk for re-offending.

Linker Decl., Ex. C, Dr. White Report at 8.

Moreover, as explained above, while Ms. Kidd is certainly guilty of this offense – and fully accepts responsibility for her actions – she is also a victim. Her combination of low-mental functioning, serious mental health issues and addiction to controlled substances made her particularly vulnerable to abuse, and particularly vulnerable to engage in misconduct. As the reports from Dr. White and Dr. Magno illustrate, Ms. Kidd has been in abusive intimate relationships since she was a young teen. That continued with her co-defendant here. As Dr. White concluded:

> Her low self esteem and need for approval make her a pawn to predatory men. She does what is asked to gain what she believes is their love. She has repeatedly been victimized by men who have prostituted her, controlled her, degraded her, beaten her, burned her, and thrown hot grease on her. Her poor judgment of people, combined with her insecurity, means that she is drawn to men who can easily manipulate and exploit her. The fact that Jackson appeared sober, clean cut and unlike other men she had known made her even more vulnerable to him.

*US v. Kidd*, Case No. 13-363 EMC;
Def.'s Sentencing Memo.                               9

Linker Decl., Ex. C, Dr. White Report at 8.

As is apparent from the facts of this case, Ms. Kidd had a potential duress defense to the charge. She chose not to pursue that defense, and instead, as soon as was practicable, admitted her wrongdoing and pled guilty to this offense. No motions or other petitions were filed in this case. As reflected in her letter to the Court, Linker Decl., Ex. A, she continues to accepted responsibility for her actions and is extremely remorseful. She realizes, however, that she cannot dwell on the past and must take actions to mover her life forward in a positive direction for herself and for her family.

In a case such as this, a paramount concern is ensuring that Ms. Kidd stay sober and never re-offend. Having her on probation for five years is the most effective way to address such a concern and protect the public from any possible future danger of recidivism. If Ms. Kidd is unable to continue on the positive path on which she has now embarked, the Court can always revoke her probation and order her into custody. With probation, as opposed to supervised release, if the Court were to revoke her probation, the statutory maximum would be life imprisonment. Some may call that a stick, others may call it an incentive; regardless, it will hopefully ensure that Ms. Kidd maintain her sobriety and mental health treatment and live a law abiding life.

In short, a felony conviction and sentence of five years probation with a condition that one year be spent in home confinement are serious consequences. Given the great strides she has achieved in her sobriety, and in full consideration of her tumultuous history, as well as the need to best protect the public from any future criminal history, a sentence of five years of probation with one year of home confinement is appropriate in this case. This sentence will more than adequately punish Ms. Kidd for her particular conduct and will also adequately deter any future wrongful conduct.

///

///

///

///

## II. SEVERAL OF THE PROPOSED SUPERVISION CONDITIONS ARE UNREASONABLE, UNNECESSARY AND UNCLEAR

In its recommendation to the Court, the Probation Officer recommends numerous special conditions of supervised release.[1] Ms. Kidd understands the need for several of these conditions and agrees that rehabilitation and therapy are the most critical component of her sentence in this case. Nonetheless, other than the mandatory conditions the Court must impose, pursuant to 18 U.S.C. § 3583(d), any additional condition must reasonably relate to the nature and circumstances of the offense and history and characteristics of the defendant; reasonably relate to the goals of deterrence, protection of the public and rehabilitation of the defendant; and, "involve no greater deprivation of liberty than is reasonably necessary for the purposes" of supervised release. 18 U.S.C. § 3583(d); *see United States v. Weber*, 451 F.3d 552, 557-58 (9th Cir. 2006). The government bears the burden of demonstrating that a discretionary supervised release condition is appropriate in a given case. *Id*. at 558. The government has failed to meet its burden to establish that several of the PSR's proposed conditions of supervised release are appropriate in Ms. Kidd's case.

Conditions number 4, 10, 11 and 12 all relate to computers and searches. These conditions appear contradictory, are unclear and are not all reasonably related to the offense conduct here. Condition number 10, which was agreed to by Ms. Kidd in her plea agreement, is perfectly appropriate, and seems to cover all of search needs for Ms. Kidd's particular circumstanstances. It is unclear what the Computer and Internet Monitoring Program (Condition number 4) is, or why it is necessary here. Morever, it is unclear why all of Ms. Kidd's electronic data must be subject to heightened scrutiny as proposed in conditions 11 and 12. While the facts in this case included a posting on myredbook.com, that is an incidental aspect of the offense conduct. The victim disclosed that she had a myredbook account prior to ever meeting Ms. Kidd and Mr. Jackson. Moreover, the federal government has now shut down that website. There is

---

[1]Because the Probation Officer recommends a term in custody, the PSR lists these conditions as proposed conditions of "supervised release." Ms. Kidd assumes the Court will consider these same conditions as conditions of probation, pursuant to 18 U.S.C. § 3563, as she is recommending a non-custodial term, and therefore presents these arguments regardless of whether it is a term of supervised release or probation.

nothing about the offense conduct here that warrants such stringent conditions as contained in proposed conditions numbers 4, 11 and 12.

Condition number 5 requires participation in sex offender treatment. Ms. Kidd welcomes mental health and substance abuse treatment, and even if not required, would do so on her own; thus, she has no objection to treatment. She does, however, object to sex offender specific treatment, which does not seem necessary or appropriate under the facts of this particular case. While there is an allegation of sexual contact between Ms. Kidd and the 16-year-old victim, it is undisputed that the victim originally stated that she was 18 years old, and there is nothing to suggest that Ms. Kidd was actively seeking minors or has any sexual attraction to minors. The general mental health treatment that Ms. Kidd is required to receive will adequately address her particular needs and is reasonably related to her offense conduct. Additionally, condition number 6 permits the use of polygraphs, as part of sex offender treatment. As such treatment is unwarranted here, the polygraph condition is also unnecessary. Moreover, polygraph testing is unreliable. Accordingly, conditions 5 and 6 should not be imposed.

Finally, condition number 7 states that Ms. Kidd "shall register with the state sex offender registration agency as required by state law." Of course, *if* required by state law, Ms. Kidd will register. Ms. Kidd, however, does not believe that this is necessarily a registerable offense and requests that this Court not require her to register. If she is required to register by the terms of the state law, so be it; however, this Court should not make any such finding or otherwise require her to register.

**CONCLUSION**

Ms. Kidd deeply regrets what she has done and is remorseful for the harm she has caused. She must be punished for her criminal conduct, yet this is not the time to send her to jail. Instead, the Court should impose the reasonable sentence permitted under the plea agreement, which is sufficient but not greater than necessary: a sentence of five years of probation, including one year of home confinement, mental health treatment and substance abuse treatment.

Dated: July 25, 2014        Respectfully Submitted,

                            JODI LINKER
                            Assistant Federal Public Defender

*US v. Kidd*, Case No. 13-363 EMC;
Def.'s Sentencing Memo.        12